# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| DEBORA D. TANNER, ET AL., | |
| PLAINTIFFS, | CASE NO.: 4:11-CV-01361-NAB |
| V. | |
| CITY OF SULLIVAN, ET AL. | JURY TRIAL DEMANDED |
| DEFENDANTS. | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE AND STRIKE PROFFERED TESTIMONY OF PLAINTIFFS' PROPOSED EXPERT, JEFFREY EISER

Come now Defendants, City of Sullivan, Chief George Counts, Darrin Jones, Jeff Rohrer, Don Reed, Kevin Halbert, and Shaun Hinson, and, pursuant to Rules 104(a) and 702 of the Federal Rules of Evidence and Local Rule 7-4.01, hereby provide their Memorandum in Support of the Motion to Exclude and Strike Proffered Testimony of Plaintiffs' Proposed Expert, Jeffrey Eiser.  In support, Defendants state as follows.

Plaintiffs endorsed Jeff Eiser as an expert to testify regarding criminal justice and jail operations related to the treatment of Karen Palmer.  As will be discussed below, Mr. Eiser's "expert opinion" is not based on a scientific method and extends to the ultimate legal issue of whether the officers' conduct was objectively reasonable under the Fourteenth Amendment, which is for the jury to decide.  Further, Mr. Eiser's opinions regarding the cause of the decedent's suicide lacks foundation and are otherwise unreliable due to the fact that his "opinion" does not assist the jury in any way.

I.  BACKGROUND

Plaintiffs asserted violations of 42 U.S.C. §1983 and Missouri Wrongful Death Statute, premised upon Missouri Revised Statute §537.080, for the custodial suicide of Karen Palmer in the

Sullivan Police Department Jail (Sullivan PD).  On the morning of October 17, 2009, Karen Palmer committed the most unthinkable act when she committed suicide by using a string fixed from her neck to the bars of her jail cell in the City of Sullivan Police Department (Sullivan PD).  Not less than 16 hours before, Sullivan PD incarcerated Palmer after she amicably confessed to stealing prescription medications and submitted a written confession attesting to as much.  The patrolmen searched Palmer's person before placing her in the cell but did not find the fateful string nor do they recall seeing it.  She denied having a mental disorder, and to the patrolmen and dispatchers she never exhibited a desire to harm herself and was otherwise pleasant.  Defendants collectively assert that Palmer was behaving normally during her incarceration.

Plaintiffs endorsed Jeffrey Eiser as an expert to testify regarding criminal justice and jail operations related to the treatment of Palmer.[1]  Mr. Eiser prepared a Rule 26 report on behalf of Plaintiffs.  In the report, Mr. Eiser expresses a variety of opinions that incorporate express legal conclusions (e.g. negligence, deliberate indifference, etc.) that specifically address the ultimate issues in this case.  Mr. Eiser's report and a thorough audit of the particular statements that are deemed objectionable are attached hereto. (See Report of Jail Operations Expert Jeff Eiser, dated April 13, 2012, and attached hereto as Exhibit A; see Defendants' Audit of the report attached hereto as Exhibit B).

Additionally, Plaintiffs intend to rely upon Mr. Eiser for an opinion that Defendants' policies contributed to Palmer's suicide.  An otherwise veiled attempt to suggest that Defendants' policies "caused" Palmer to commit suicide.  Mr. Eiser testified as follows:

Additionally, Mr. Eiser testified that the "cause" of Palmer's suicide was stated as follows:

19   **Q.  Just to be clear about your opinions about**

20   **the failures of the officers of the Sullivan police**

21   **department, is it a correct statement to say that your**

---

[1] Plaintiffs originally endorsed another expert, Dr. Michael Mullen, a toxicologist, who was expected to testify concerning toxicology, but he was later withdrawn by Plaintiffs.

2

22 **opinion is that their actions or their inactions**

23 **contributed to the suicide?**

24        A.  I think that's how I stated it in my report.

                                . . .

9  FURTHER RE-CROSS EXAMINATION,

10  QUESTIONS BY MS. POWERS:

11        **Q.  Did putting Karen Palmer in her cell with a**

12  **cord that was, I don't know, approximately -- the length**

13  **of a hoodie string cord contribute to the opportunity for**

14  **her to commit suicide?**

15        A.  Certainly.

16        **Q.  And all these other factors that you talked**

17  **about, for example, not doing cell checks, did that**

18  **contribute to the opportunity for her to commit suicide?**

19        A.  Absolutely.

(See the May 4, 2012 Deposition of Jeffrey Eiser, 133:19-24 and 138:11-19, attached hereto as Exhibit C).

   II.   ARGUMENT

"Decisions concerning the admission of expert testimony lie within the broad discretion" of the Court. *Alberternst v. Hunt*, No. 4:10CV642, 2011 U.S. Dist. LEXIS 141829, *16 (E.D. Mo. Dec. 9, 2011) (citing *Anderson v. Raymond Corp.*, 340 F.3d 520, 523 (8th Cir. 2003)). "The trial judge is first charged with determining whether the witness is qualified to offer expert testimony." *Id*. (citing *Schmidt v. Magyari*, 557 F.3d 564, 570 (8th Cir. 2009) (citing *Daubert v. Merril Dow Pharmaceutical, Inc.,* 509 U.S. 579, 589 (1993)). Pursuant to Rule 702 of the Federal Rules of Evidence, a witness properly qualified as an expert may testify in regard to their "scientific, technical, or other

specialized knowledge" so long as it serves to "assist the trier of fact to understand the evidence or determine a fact in issue." *Id*. (citing Fed.R.Evid. 702).

Under Rule 702 of the Federal Rules of Evidence and *Daubert*, this Court is obligated to act as a "gatekeeper" to insure that proffered expert testimony is both relevant and reliable. *Alberternst*, 2011 U.S. Dist. LEXIS 141829, at *17. "A witness can be qualified as an expert by 'knowledge, skill, experience, training, or education,' Fed. R. Evid. 702, and it is the responsibility of the trial judge to determine whether a particular expert has sufficient specialized knowledge to assist jurors in deciding the specific issues in the case." *Wheeling Pittsburgh Steel Corp. v. Bellman River Terminals, Inc.*, 254 F.3d 706, 714-15 (8th Cir. 2001)(citing *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 (1999)). "Once initial expert qualifications and usefulness to the jury are established, however, a district court must continue to perform its gatekeeping role by ensuring that the actual testimony does not exceed the scope of the expert's expertise, which if not done can render expert testimony unreliable under Rule 702, *Kumho Tire*, and related precedents." *Id*. "The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

### A. EISER'S REPORT INCLUDES LEGAL CONCLUSIONS ABOUT NEGLIGENCE AND DELIBERATE INDIFFERENCE THAT SQUARELY ADDRESS THE ULTIMATE ISSUES IN THIS CASE.

While expert testimony on police practices are generally admissible in §1983 cases, the court will not allow experts to offer any legal conclusions by his report or his testimony at trial that either explicitly or implicitly touch on the ultimate legal issue in the case. *Alberternst*, 2011 U.S. Dist. LEXIS 141829, at *17 (precluding the expert from offering his opinion that touched upon the ultimate issue of the case, that is, whether defendant police officers' conduct was reasonable under the totality of the circumstances faced) (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1353-54 (6th Cir. 1994) (in a §1983 claim, district court erroneously admitted expert testimony opining that certain conduct by defendant amounted to "deliberate indifference," which improperly expressed the ultimate legal conclusion at issue in the case)).

4

In *Alberternst*, the controversy did not involve "negligence" or "deliberate indifference" but the use of "excessive force."  The court excluded the expert's report and testimony from specifically addressing the ultimate legal issue in the case: "the Court will not allow Mr. Ijames [], either by his report or his testimony at trial, to offer any legal conclusions which either explicitly or implicitly touch on the ultimate issue in that case, that is, whether Defendants' conduct was reasonable under the totality of the circumstances they faced."  *Alberternst*, at *17.  Perhaps closer to the point presented here is the case of *Berry* where the controversy did involve "deliberate indifference" that arose out of circumstances where the decedent was shot by a police officer.  *Berry*, 25 F.3d at 1353-54.  There the court excluded the proffered "expert opinion" after concluding that it was "carefully couched in the precise language used in case law, either indicating a keen awareness by [the expert] of the direction in which he had to head, or else careful coaching prior to his testimony."  *Id.*, at 1353.  Further, the court stated, "it is the responsibility of the court, not testifying witnesses, to define legal terms."  *Id.*

As outlined by *Alberternst* and *Berry*, this Court should exclude Mr. Eiser's opinion as reflected in his report and not allow him to instruct the jury what result to reach.  Throughout the report, Mr. Eiser peppered his report with legal opinions with such frequency that they cannot be recited herein.  However, in the spirit of brevity, Defendants offer the following excerpts to provide a sample of the legal opinions expressed by Mr. Eiser in the report:

| | |
|---|---|
| The ignoring or failing to take corrective action to protect an inmate's safety and/or provide for their necessary needs would amount to "deliberate indifference" to the safety of the inmate. | See Ex. A, ¶, 7 |
| The City of Sullivan (MO), Police Chief George Counts, Darrin Jones, Shaun Hinson, Jeff Rohrer, Don Reed, Kevin Halbert and David Roche negligently failed to take reasonable steps to protect Karen Palmer when they knew or could have known she was at risk of self harm. | See Ex. A, p. 22 |
| The negligence of the City of Sullivan (MO), Police Chief George Counts, Darrin Jones, Shaun Hinson, Jeff Rohrer, Don Reed, Kevin Halbert and David Roche as outlined in paragraphs 1-10 directly contributed to cause the hanging and resulting death of Karen Palmer. | See Ex. A, p. 23 |

The rest of the legal conclusions that Defendants request to prohibit Mr. Eiser from expressing are specifically outlined in Exhibit B and incorporated fully by this reference.  As further proof of Mr. Eiser's flagrant attempt to instruct the jury as to his understanding of legal terms, Mr. Eiser ingenously broke down the categories of his opinions into sections entitled "A. Opinions on Negligence Issues:" and "B. Opinions on Deliberate Indifference issues:".  Ex. A, pp. 22 and 24.  Furthermore, Mr. Eiser expressed opinions using other legal conclusions impacting this case that should be excluded as well, such as "obvious," "suicidal," "custom and practice," "punish," and "shock the conscience."  Ex. B.  Whether or not the foregoing reflects a keen awareness of legal parlance by Mr. Eiser or, perhaps, careful coaching in drafting the report makes no difference here.  It is wrong and it demonstrates what must amount to the most egregious attempt by an expert to invade the province of the jury by specifically applying the legal terms to the facts of this case. *Alberternst*, 2011 U.S. Dist. LEXIS 141829, at *17; *Berry*, 25 F.3d at 1353.

Whether Defendants' treatment of Palmer amounted to "negligence" or "deliberate indifference" is the ultimate legal conclusion that the jury is called upon to determine and it is not helpful, much less appropriate, for the expert to make that conclusion for the jury.  Considering the nature and frequency of the references in the report, the entirety of Mr. Eiser's opinions as reflected in his report should be excluded and accompanied by an instruction from the Court that leaves no room for misunderstanding.

  B. EISER IS NOT QUALIFIED TO EXPRESS AN OPINION THAT DEFENDANTS CONTRIBUTED TO KAREN PALMER'S SUICIDE.

Plaintiffs tendered Mr. Eiser as an expert to testify concerning matters related to criminal justice and jail operations as it related to the treatment of Karen Palmer.  To that end, Defendants recognize under Rule 702 of the Federal Rules of Evidence that Mr. Eiser presumably qualifies as an

6

expert.[2]  However, the real question is whether Mr. Eiser's expertise is sufficient to support his opinion that Defendants' actions "directly contributed to cause the hanging and resulting death of Karen Palmer." Ex. A, p. 26-27.

Mr. Eiser admitted that he is <u>NOT</u> a medical expert.  Ex. C, 92:16-21 and 135: 13-15.  He has absolutely no experience or training as a psychiatrist or psychologist.  Ex. C, 135:16-19.  Nor does he claim to have such training through his administrative experiences.  Further, he is not an M.D. nor does he possess a Ph.D, much less any expertise in the clinical treatment of inmates with mental behaviors.  Ex. C, 135:20-23.  Yet, despite the fact that he admittedly has no medical training, Mr. Eiser does not hesitate to offer opinions that express that Defendants "contributed to cause" Palmer to hang herself.  Ex. A, p. 26-27; Ex. C, pp. 133:19-24 and 138:11-19.  On this basis alone, the Court should exclude any of Mr. Eiser's testimony concerning what "caused" or "contributed to cause" Palmer to commit suicide.   Indeed, any line of testimony linking Defendants to "cause" or "contribute to cause" Palmer's suicide necessarily requires the testimony of a mental health professional. *Estate of Novack v. Wood*, 226 F.3d 525, 532 (7th Cir. 2000) (excluding the testimony of an expert psychiatrist for not identifying the precise policy that was the but for cause of the inmates suicide).  Mr. Eiser is a former prison administrator – not a psychiatrist – and he cannot, therefore, express an opinion regarding what contributed to cause Palmer to kill herself on the morning of 10/17.

Furthermore, while Mr. Eiser's opinion may demonstrate that Sullivan PD personnel could have done more to become aware of the danger that Palmer posed to herself, that opinion does not indicate that Sullivan PD's policies caused jail personnel to be deliberately indifferent or negligent in the face of a patently obvious suicide risk. *Estate of Novack*, 226 F.3d at 532; *Kivland v. Columbia Orthopedic Group,* 331 S.W.3d 299, 309 (2011) (where the Missouri Supreme Court specifically

---

[2] Defendants specifically preserve any additional arguments not specifically outlined herein to contest the qualifications of Mr. Eiser to testify as an expert under Rule 702 of the Federal Rules of Evidence.

required the testimony of a medical expert in order to attribute fault for causing the suicide of another).  In other words, the evidence presented by Plaintiffs in the form of Mr. Eiser's report and testimony has not shown that "but for" Sullivan PD's policies, Defendants would have been aware that Palmer posed a high risk of suicide and would have taken reasonable steps to prevent her from taking her own life.  *Id*.  For all of the foregoing reasons, Mr. Eiser's opinions regarding the cause of the suicide lacks foundation and is otherwise unreliable due to the fact that his "opinion" does not assist the jury in any way.

WHEREFORE, Defendants, City of Sullivan, Chief George Counts, Darrin Jones, Jeff Rohrer, Don Reed, Kevin Halbert, and Shaun Hinson, respectfully request the Court to enter an order excluding the proffered testimony of Plaintiffs' expert, Jeffrey Eiser, and for such further relief as the Court deems necessary under the circumstances.

*/s/ Benjamin M. Fletcher*
Robert J. Wulff, Bar No. 34081 MO
Benjamin M. Fletcher Bar No. 58309 MO
**EVANS & DIXON, LLC**
Attorney for Defendants City of Sullivan, et al.
211 North Broadway
Suite 2500
St Louis MO  63102
314-552-4059; 314-884-4459
rjwulff@evans-dixon.com
bfletcher@evans-dixon.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2012 I electronically filed Defendants' Motion to Exclude and Strike Proffered Testimony of Plaintiffs' Proposed Expert, Jeffrey Eiser, and the Memorandum in Support with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to all parties/attorneys of record.

*/s/ Benjamin M. Fletcher*